CASE 87—PETITION EQUITY—NOVEMBER 22.

# Monohon, &c., vs. Caroline (of color), &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

A testator had the lawful right and power by will to liberate and provide
for the manumission of his slaves; and also the right to make bequests
of property to them when manumitted.

HARRISON & BENNETT and JOHN ROBERTS,    For Appellants,
CITED—

16 *B. Mon.*, 221; *Jackson vs. Collins.*

13 *B. Mon.*, 191.

2 *Rev, Stat.*, art. 9, 380 *and* 462.

18 *B. Mon.*, 20.

16 *B. Mon.*, 340, 367; *Embry vs. Taylor.*

4 *Desaus. Rep.*, 266, *and N. C. Rep.*, 353.

1 *Metcalfe*, 515.

14 *B. Mon.*, 296.

3 *Metcalfe*, 471.

13 *B. Mon.*, 192; *Glover, &c., vs. Allen, &c.*

5 *Littell*, 270; *Chasteen vs. Ford.*

2 *Duvall*, 334–340; *Dunlap vs. Shreve's ex'rs.*

DEMBITZ,                                             For Appellee (John),

CITED—

*Civil Code, section* 894.

4 *Dana,* 245; *Aleck vs. Tevis.*

5 *Littell,* 268; *Chasteen vs. Ford.*

16 *B. Mon.; Embry vs. Taylor.*

7 *B. Mon.,* 405; *Graham vs. Sam et al.*

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Mrs. Lucy Fine, by her last will gave freedom to her slaves, and directed that her brother, Nathan Mardis, should take them to Cincinnati, Ohio, or other suitable place, and execute deeds of manumission.

She also made some specific bequest to each of them, and directed her residence to be sold, and its proceeds to be divided among them or their descendants.

The slaves John and Matt had belonged to her deceased husband, and fell to her for life only.

Caroline was not to enjoy freedom until the death of an aged negro named Milly, who had been a faithful slave to the testatrix.

Two questions are raised in this record : first, could the testatrix devise either freedom or property to John and Matt? Second, could she devise or bequeath to her slaves property or money, though she first bequeathed freedom to them ?

John and Matt were taken to Cincinnati and there manumitted, and the heirs of Jacob Fine, the testatrix's deceased husband, recovered of her estate their value; and whether these two be entitled to any part of the proceeds of the house and lot matters but little, so far as appellants are concerned, if the others are capable of taking; for they, claiming to be heirs of Mrs. Fine, are only interested in defeating the bequest, and in nowise as

to how or between whom the bequest shall be distributed. It is therefore only important to inquire whether those persons entitled to freedom under her will could take the bequests.

It is insisted, that under our laws slaves are incapable of taking by devise, bequest, contract, or otherwise, save as to their own freedom; that by virtue of this will and our statute these slaves were not invested with their freedom upon the testatrix's death, but their enfranchisement depended upon their going to Cincinnati or other suitable place, and there being manumitted; therefore, the bequest was to persons incapable of taking.

In the eighth item of the will it is provided, that " *to the slaves herein and hereby emancipated* my executors shall pay all the money realized by the sale of the house and lot in which I reside, share and share alike; and if any of said negroes die before said division, his or her share is to be equally divided amongst the survivors"—the descendants, if any, of those who may be dead to take an equal share. The donation is to the slaves *herein and hereby emancipated;* therefore, if some were entitled and others not to emancipation, such as were entitled would take the whole bequest, if capable of taking any part; and as to which were or were not entitled to the property cannot be a matter of any interest to appellants, as this only affects appellees, who are not seeking to disturb the judgment.

In *Grover et al. vs. Allen et al.* (13 *B. Mon.*, 192) this court held that the bequests of Chas. Allen, a free man of color, to his children by a slave wife, the property of another, were void, because his children were the slaves of another, and were incapable of taking any rights under his will.

In *Jones vs. Lipscomb* (14 *B. M.*, 296) this court held that the bequests of Humphrey Jones to Dodson and

Spicy were void, because they were his slaves, and were not liberated by his last will, but were disposed of by him as slaves, and that no implication of freedom arose from the various provisions of the will.

In *Taylor vs. Embry* (16 *B. M.*, 340) this court held upon general principles, and the authority of the preceding cases, that a devise in trust for the benefit of a slave was void.

In the case under consideration the testatrix expressly directs the liberation of her slaves, and then devises the property to them. It is true that they did not become immediately enfranchised upon the testatrix's death, but they were entitled to freedom, and had any one interposed obstacles to its being perfected, the chancellor, on their application, would have removed such obstacles, and aided them in perfecting their liberation. Several of these slaves were entitled, immediately after her death, to perfect their freedom, and having done so, they were as capable of receiving and holding property by purchase, devise, or bequest, as other persons.

In *Legrand vs. Darnall* (2 *Peters*, 665) the supreme court of the United States held that the devise to the testator's son, by his own slave, was good, because previous deeds of manumission, to take effect upon his death, had freed them; also, that a devise of property by an owner to his slave gave freedom to the slave.

And in *Hall vs. Mullin* (5 *Harrison & Johnson*, 192) the appellate court of Maryland held that the devise by the testator, Hall, to Dolly Mullin, who he supposed was freed by his own act, was upheld, though, as matter of law, she had not been freed, but still was the testator's slave. Although this court has held that a devise to one who was a slave, without right to future freedom, was void because the devisee was incapable of taking, and

that a mere bequest did not impliedly give freedom to the slave, yet it has never held, so far as we know, that a devise to one who was to be free, and therefore at some future time should be capable of holding property, was also void, and we perceive no reason whereon to base such a rule.

It has been very common in Kentucky and other slave States, during the existence of slavery, for the owner to provide for the liberation of his slaves, and also devising to them property; and their right to the property, when so freed, has never been judicially denied them, even if ever controverted, so far as we are informed.

We know of no statute nor public policy which forbid a testator, as has frequently been the case, from directing the freedom of his slaves in future, after serving a given time, and when so freed, to be paid out of his estate a given sum, or to have a given piece of property. There is nothing unjust in a testator's securing to his freed people a portion of their own earnings, or in his compensating them for their faithful services rendered, or in donating to them by way of mere gratuitous bounty. We concur with the chancellor, that the appellees were entitled to receive this legacy.

Wherefore, the judgment is affirmed.